IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KRISTOFER D. KNICKERBOCKER,<br><br>CAMERON A. HARRUP,<br><br>KIMBERLYNA L. SOK,<br><br>*Defendants.* | **UNDER SEAL**<br><br>Case No. 1:21-MJ-144 |

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Michael Jordan, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is submitted in support of a criminal complaint and arrest warrant charging KRISTOPHER D. KNICKERBOCKER, CAMERON A. HARRUP, and KIMBERLYNA L. SOK with knowingly, intentionally, and unlawfully conspiring with others, known and unknown, to distribute five grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. I have been a Special Agent with the ATF since June 2018. Prior to my appointment with the ATF, I was a sworn law enforcement officer in the Commonwealth of Virginia for over thirteen years, the last six of which I was assigned to the Special Investigations Bureau, Street Crimes Unit. I am currently assigned to the ATF Falls Church Group II Field Office, an enforcement group responsible for investigating violent crime, gangs, armed drug trafficking, and

other firearm-related violations. In my capacity as a law enforcement officer, I have investigated individuals for the illegal possession and use of firearms, illegal possession and distribution of controlled substances, and for the commission of violent crimes. I have been trained on the methods of narcotics operations, and the language and patterns of drug use and trafficking. I have been trained in the use of various investigative techniques including the use of wiretaps, physical surveillance, undercover agents, confidential informants and cooperating witnesses, the controlled purchase of illegal narcotics, the trafficking of firearms, electronic surveillance, consensually monitored recordings, investigative interviews, financial investigations, the service of Grand Jury subpoenas, and the execution of search and arrest warrants.

3. The facts and information contained in this affidavit are based upon my training and experience, participation in this and other investigations, personal knowledge, and observations during the course of this investigation, as well as the observations of other federal agents and individuals involved in this investigation. All observations not personally made by me were relayed to me by the individuals who made them or were conveyed to me by my review of the records, documents, and other physical evidence obtained during the course of the investigation. This affidavit is meant to convey information necessary to support probable cause for the requested complaint and arrest warrant and is not intended to include each and every fact observed by me or known to the government. The inferences and conclusions I draw from the evidence included in this affidavit are what I believe based on my training, experience, and knowledge of the investigation.

## INVESTIGATION

4. In February 2021, ATF and Prince William County Police Department ("PWCPD") began investigating the distribution of methamphetamine in the northern Virginia area. Law

enforcement determined that KNICKERBOCKER, who lives in Springfield, Virginia, is the local source of supply. Law enforcement conducted three controlled purchases of methamphetamine from KNICKERBOCKER, HARRUP, and SOK between February and March of this year, purchasing a total amount of over five grams of methamphetamine.

5. Information in this affidavit was obtained with the assistance of a confidential source ("CS"), whom law enforcement has interviewed regularly since June 2020.[1] Law enforcement used several means to corroborate the information provided by the CS, including physical surveillance, audio and video surveillance, recordings, and documents. The CS has no pending charges in the Eastern District of Virginia. The CS has not received monetary payment for providing information in connection with this case and other cases in the past. To my knowledge, CS has never been intentionally untruthful or misleading in the information he has provided to law enforcement.

**PROBABLE CAUSE**

*Information Obtained from the Confidential Source ("CS")*

6. In February 2021, the CS reported to PWCPD that KNICKERBOCKER was an armed distributor of methamphetamine in the northern Virginia area. The CS stated that KNICKERBOCKER obtains large quantities of methamphetamine and was looking to expand his distribution network. The CS stated that he has seen KNICKERBOCKER with methamphetamine and numerous firearms at KNICKERBOCKER's residence in Springfield, Virginia, within the Eastern District of Virginia, to include handguns and what appeared to be a sawed-off shotgun.

---

[1] The investigation has relied on the use of a confidential source ("CS"), an undercover law enforcement officer ("UC"), who are referred to herein in the masculine regardless of true gender.

3

The CS stated KNICKERBOCKER has talked about making silencers and fully automatic weapons. A check of law enforcement databases and open-source documents confirmed that KNICKERBOCKER currently lives at a residence in Springfield, Virginia. The CS provided law enforcement with the telephone number of 703-462-XXXX that he uses to contact KNICKERBOCKER (hereinafter referred to as "KNICKERBOCKER TELEPHONE NUMBER"). A check of law enforcement databases revealed that KNICKERBOCKER TELEPHONE NUMBER returned to KNICKERBOCKER. The information provided by the CS about KNICKERBOCKER regarding their locations, vehicles, and activities was corroborated by law enforcement and found to be credible.

*February 26, 2021 Purchase of Methamphetamine from KNICKERBOCKER and HARRUP*

7. During the week of February 21, 2021, at the direction of law enforcement, the CS exchanged text messages and phone calls with KNICKERBOCKER, via an encrypted application, to arrange the purchase of methamphetamine from KNICKERBOCKER by an undercover law enforcement officer ("UC") who the CS would introduce to KNICKERBOCKER at the deal. The CS and KNICKERBOCKER made plans to meet on February 26 at a restaurant in Woodbridge, Virginia. On or about February 26, the CS and the UC each were provided a transmitting/recording device. Prior to the controlled purchase, law enforcement established surveillance on KNICKERBOCKER's residence. Law enforcement observed a silver Lexus, owned by HARRUP, arrive to KNICKERBOCKER's residence, and pull into the driveway. Shortly thereafter, two men left KNICKERBOCKER's residence in HARRUP's vehicle. Approximately 20 minutes later, law enforcement observed KNICKERBOCKER and HARRUP arrive in the silver Lexus to the restaurant in Woodbridge where the deal was set to take place. The UC and the CS met with KNICKERBOCKER and HARRUP inside the restaurant at a table near the front.

KNICKERBOCKER explained the prices for different quantities of methamphetamine and noted that it was from California. KNICKERBOCKER further advised the UC that he had just purchased a piece of equipment that could make firearms, silencers, and drum magazines. He also stated that he could modify firearms to make them function as fully automatic weapons. KNICKERBOCKER then advised the UC that HARRUP would be conducting the transaction with the UC. During the transaction, which occurred in the restroom of the restaurant, HARRUP provided the UC with two baggies containing a crystal-like substance. One baggie weighed approximately 3.5 grams and the second baggie weighed approximately 1.5 grams, totaling approximately five grams of suspected methamphetamine. In exchange for the drugs, the UC gave $450 to HARRUP.

8. The suspected drugs were submitted as evidence to the DEA laboratory for analysis. The resulting reports confirmed that the first baggie contained approximately 3.26 grams of 97 percent pure methamphetamine and the second baggie contained approximately 1 gram of 99 percent pure methamphetamine.

*March 9, 2021 Purchase of Methamphetamine from KNICKERBOCKER and SOK*

9. During the week of March 7, 2021, the UC exchanged text messages and phone calls with KNICKERBOCKER using KNICKERBOCKER TELEPHONE NUMBER, via an encrypted application, to arrange a purchase of methamphetamine from KNICKERBOCKER on March 9. KNICKERBOCKER told the UC that he would be sending SOK to deliver the drugs to the UC. They agreed to use the same Woodbridge restaurant where they met for the February 26 transaction. On or about March 9, 2021, the UC was provided with several transmitting/recording devices at the staging area and then left to meet SOK at the restaurant. Law enforcement established surveillance on the restaurant and at KNICKERBOCKER's residence. After arriving at the restaurant, the UC received a call from SOK who told the UC that she was lost. The UC and

SOK agreed to meet at a new location in the parking lot of a nearby grocery store in Woodbridge. SOK told the UC that she was driving a black Honda Civic. Shortly thereafter, surveillance units watched SOK arrive in the parking lot of the grocery store where the UC was waiting. SOK eventually entered the UC's vehicle, removed a box of suspected methamphetamine from her jacket, and handed it to the UC, who weighed it on his digital scale. SOK provided the UC with approximately 30 grams of suspected methamphetamine in exchange for $1,200. During the transaction, SOK said that she had just come from KNICKERBOCKER'S residence. After the controlled purchase, law enforcement conducted surveillance of SOK, who drove straight to KNICKERBOCKER'S residence.

10. The suspected drugs field tested positive for methamphetamine. They were submitted as evidence to the DEA laboratory for analysis. The resulting reports confirmed the presence of over 27 grams of 98 percent pure methamphetamine.

*March 18, 2021 Purchase of Methamphetamine from KNICKERBOCKER*

11. During the week of March 14, 2021, the UC exchanged text messages and phone calls with KNICKERBOCKER using KNICKERBOCKER TELEPHONE NUMBER, via an encrypted application, to arrange the purchase of methamphetamine from KNICKERBOCKER. During one exchange, KNICKERBOCKER sent the UC pictures of what appeared to be several handguns and a "sear" (an item used to turn a semi-automatic pistol into a fully automatic pistol). During a phone call with the UC, KNICKERBOCKER discussed the challenges associated with ordering methamphetamine from the dark web. On or about March 18, 2021, the UC and KNICKERBOCKER arranged a deal for half an ounce of methamphetamine in exchange for $600. They agreed to meet at KNICKERBOCKER'S residence that same day. The UC was provided with several transmitting/recording devices. When the UC arrived at KNICKERBOCKER'S

6

residence in Springfield, KNICKERBOCKER escorted him to a shed/workshop located behind the residence on his property. KNICKERBOCKER advised the UC that he had resided at the residence for approximately six years. The UC saw that SOK was inside the shed and appeared to be packaging suspected methamphetamine. KNICKERBOCKER provided the UC with approximately 15 grams of suspected methamphetamine in exchange for $600.

12. After the transaction, the UC briefly stayed in the shed to speak with KNICKERBOCKER. The UC observed several disassembled handguns on a table. The table appeared to be the same table from the pictures that KNICKERBOCKER sent to the UC earlier in the week. While UC and KNICKERBOCKER spoke, HARRUP entered the shed and conversed with the UC and KNICKERBOCKER about methamphetamine. KNICKERBOCKER also discussed making firearms and having them function as fully automatic weapons. Shortly thereafter, the UC left KNICKERBOCKER'S residence. The suspected drugs were submitted as evidence to the DEA laboratory for analysis. The results have not yet been confirmed.

## CONCLUSION

13. Based on the foregoing, I submit that there is probable cause to believe that from at least February 2021 through March 2021, in the Eastern District of Virginia and elsewhere, KRISTOFER D. KNICKERBOCKER, CAMERON A. HARRUP, and KIMBERLYNA L. SOK knowingly, intentionally, and unlawfully conspired to distribute five grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Respectfully submitted,

MICHAEL JORDAN  Digitally signed by MICHAEL JORDAN
Date: 2021.04.21 14:25:31 -04'00'

Michael Jordan
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to in accordance with Fed. R. Crim. P. 4.1
by telephone on April 22, 2021.

_____
The Honorable Michael S. Nachmanoff
United States Magistrate Judge