THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

2021

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KRISTOFER DOUGLAS KNICKERBOCKER,<br>(Counts 1, 3, 4–6)<br><br>KIMBERLYNA LOVE SOK,<br>(Counts 1–2)<br><br>*Defendants.* | Case No. 1:21-CR-00162<br><br>Count 1: 21 U.S.C. §§ 841(a)(1) and 846<br>(Conspiracy to Distribute 50 Grams or More of Methamphetamine)<br><br>Counts 2–3: 21 U.S.C. § 841(a)(1)<br>(Distribution of 5 Grams or More of Methamphetamine)<br><br>Count 4: 18 U.S.C. § 924(c)<br>(Possession of a Firearm in Furtherance of Drug Trafficking)<br><br>Count 5: 18 U.S.C. § 922(g)(3)<br>(Possession of a Firearm by an Unlawful Drug User)<br><br>Count 6: 18 U.S.C. § 922(o)<br>(Unlawful Possession of a Machinegun)<br><br>Forfeiture Notice |

## INDICTMENT

July 2021 Term – Alexandria, Virginia

### COUNT ONE
*(Conspiracy to Distribute 50 Grams or More of Methamphetamine)*

THE GRAND JURY CHARGES THAT:

THE CONSPIRACY

1. Beginning in or around February 2021 and continuing through April 23, 2021, within the Eastern District of Virginia and elsewhere, the defendants, KRISTOFER DOUGLAS KNICKERBOCKER and KIMBERLYNA LOVE SOK, did knowingly, intentionally, and

unlawfully conspire with others, known and unknown to the Grand Jury, to distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1).

## WAYS, MANNER, AND MEANS

The main purpose of the conspiracy was to make money through the distribution of methamphetamine. The ways, manner, and means by which KRISTOPHER DOUGLAS KNICKERBOCKER ("KNICKERBOCKER") and KIMBERLYNA LOVE SOK ("SOK") carried out this purpose included, but were not limited to, the following:

2. It was part of the conspiracy that, to conduct drug trafficking business, KNICKERBOCKER utilized telephone number (703) XXX-4468 and SOK utilized telephone number (240) XXX-2415. KNICKERBOCKER utilized an encrypted messaging application to communicate with others about the purchase and distribution of methamphetamine.

3. It was part of the conspiracy that KNICKERBOCKER met customers at a restaurant in Woodbridge, Virginia, and at his home in Springfield, Virginia, both within the Eastern District of Virginia, and elsewhere, to conduct methamphetamine transactions.

4. It was part of the conspiracy that KNICKERBOCKER maintained a free-standing garage on his property where he stored and packaged methamphetamine for distribution. KNICKERBOCKER distributed methamphetamine to customers in the garage and in his residence.

5. It was part of the conspiracy that SOK packaged methamphetamine for distribution. SOK drove to various locations in the Eastern District of Virginia to deliver methamphetamine to customers on behalf of KNICKERBOCKER. SOK also brought customers to KNICKERBOCKER's residence to purchase methamphetamine from KNICKERBOCKER.

2

6. It was part of the conspiracy that KNICKERBOCKER had several sources of supply of methamphetamine, including Unindicted Co-Conspirator One ("UCC-1"). UCC-1 transported bulk quantities of methamphetamine to KNICKERBOCKER's residence where he sold KNICKERBOCKER approximately one-third pounds of methamphetamine every two to three weeks, depending on how quickly KNICKERBOCKER sold the methamphetamine he previously purchased from UCC-1.

7. When UCC-1 did not have methamphetamine available to sell KNICKERBOCKER, KNICKERBOCKER utilized the connections of Cooperating Defendant One ("CD-1"), who obtained methamphetamine for KNICKERBOCKER from Unindicted Co-Conspirator Two ("UCC-2"). CD-1 purchased methamphetamine from UCC-2 in Fairfax, Virginia on three occasions. CD-1 first purchased only two to three grams of methamphetamine from UCC-2 so that KNICKERBOCKER could test the quality of the product. On the second occasion, CD-1 purchased one-half pounds of methamphetamine from UCC-2 on behalf of KNICKERBOCKER for approximately $3,500. On the third occasion, CD-1 purchased one pound of methamphetamine from UCC-2 on behalf of KNICKERBOCKER for approximately $7,000. KNICKERBOCKER distributed the methamphetamine he obtained from UCC-1 and UCC-2 to customers in Prince William County, Virginia.

8. It was part of the conspiracy that KNICKERBOCKER possessed firearms to protect himself, his methamphetamine, and the proceeds of the drug conspiracy. In furtherance of the drug conspiracy, KNICKERBOCKER concealed a loaded Glock handgun underneath a work desk in the garage by attaching a holster to the bottom side of the desk. KNICKERBOCKER kept methamphetamine in a drawer of the work desk. In a metal cabinet in the garage approximately three feet from the work desk, KNICKERBOCKER stored several loaded firearms next to cash

proceeds, methamphetamine, and other illicit substances. KNICKERBOCKER stored other firearms and ammunition in a room in the basement of his residence.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, the defendants and their conspirators committed overt acts including, but not limited to, the following:

9. On or about February 26, 2021, KNICKERBOCKER arranged for the distribution of approximately five grams of methamphetamine to an undercover law enforcement officer ("UC") at a restaurant in Woodbridge, Virginia. KNICKERBOCKER and CD-1 met the UC at the restaurant, where KNICKERBOCKER directed CD-1 to conduct the drug transaction with the UC. In the bathroom of the restaurant, CD-1 provided approximately five grams of methamphetamine to the UC in exchange for $450.

10. On or about February 28, 2021, KNICKERBOCKER sent an encrypted text message to the UC inquiring if the UC liked the methamphetamine that KNICKERBOCKER sold him two days prior. The UC then called KNICKERBOCKER via the encrypted application to arrange an additional purchase of methamphetamine. KNICKERBOCKER agreed to sell the UC an ounce of methamphetamine and stated that a shipment of methamphetamine would be arriving from California on March 1, 2021.

11. On or about March 1, 2021, KNICKERBOCKER sent an encrypted text message to the UC, writing, "We're currently awaiting delivery."

12. On or about March 2, 2021, KNICKERBOCKER sent an encrypted text message to the UC, writing, "Yo delivery got moved to tonight. I'll hyu when it's in hand."

13. On or about March 8, 2021, KNICKERBOCKER and the UC exchanged encrypted text messages wherein KNICKERBOCKER told the UC that he would have the methamphetamine

delivered to the UC at the same restaurant in Woodbridge, Virginia the next day. KNICKERBOCKER suggested that the UC tip his "delivery person."

14. On or about March 9, 2021, KNICKERBOCKER and the UC exchanged encrypted text messages about the delivery of the methamphetamine to the UC. KNICKERBOCKER noted that SOK was on her way to the UC but hit rush hour traffic. KNICKERBOCKER wrote, "if it's any consolation it's the creme of the crop you getting."

15. On or about March 9, 2021, SOK departed KNICKERBOCKER's residence in her vehicle and drove to the parking lot of a grocery store in Woodbridge, Virginia, where she distributed approximately 28 grams of methamphetamine to the UC in exchange for $1,200.

16. On or about March 17, 2021, in a phone call with the UC, KNICKERBOCKER agreed to sell the UC an ounce of methamphetamine the next day.

17. On or about March 18, 2021, in an encrypted text message with the UC, KNICKERBOCKER referred to UCC-1 as his partner and said that he may only have half an ounce of methamphetamine to sell to the UC instead of the full ounce. KNICKERBOCKER and the UC arranged for the UC to come to KNICKERBOCKER's residence in Springfield, Virginia later that afternoon.

18. On or about March 18, 2021, in KNICKERBOCKER's garage in Springfield, Virginia, KNICKERBOCKER retrieved methamphetamine from a drawer of his work desk and distributed a half-ounce of methamphetamine to the UC in exchange for $600.

19. On or about March 18, 2021, while sitting at the work desk in KNICKERBOCKER's garage in Springfield, Virginia, SOK packaged methamphetamine in a small plastic bag.

(All in violation of Title 21, United States Code, Sections 841(a)(1) and 846.).

## COUNT TWO
*(Distribution of 5 Grams or More of Methamphetamine)*

THE GRAND JURY CHARGES THAT:

On or about March 9, 2021, in Woodbridge, Virginia, within the Eastern District of Virginia, the defendant, KIMBERLYNA LOVE SOK, did knowingly, intentionally, and unlawfully distribute 28 grams of methamphetamine (actual), a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 841(a)(1).)

## COUNT THREE
*(Distribution of 5 Grams or More of Methamphetamine)*

THE GRAND JURY CHARGES THAT:

On or about March 18, 2021, in Springfield, Virginia, within the Eastern District of Virginia, the defendant, KRISTOFER DOUGLAS KNICKERBOCKER, did knowingly, intentionally, and unlawfully distribute 15 grams of methamphetamine (actual), a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 841(a)(1).)

## COUNT FOUR
*(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)*

THE GRAND JURY CHARGES THAT:

On or about April 23, 2021, in Springfield, Virginia, within the Eastern District of Virginia, the defendant, KRISTOFER DOUGLAS KNICKERBOCKER, did unlawfully and knowingly possess a firearm, specifically, two handguns and three shotguns, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely: conspiracy to distribute 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846), as charged in Count One of this Indictment.

(In violation of Title 18, United States Code, Section 924(c)(1)(A)(i) and (2).)

## COUNT FIVE

*(Possession of a Firearm by an Unlawful Drug User)*

THE GRAND JURY CHARGES THAT:

On or about April 23, 2021, in Springfield, Virginia, within the Eastern District of Virginia, the defendant, KRISTOFER DOUGLAS KNICKERBOCKER, who was at all relevant times a knowing unlawful user of controlled substances, including methamphetamine, did knowingly, intentionally, and unlawfully possess the following firearms, in and affecting interstate commerce:

a. Zastava Rifle, Model M 70, .762 caliber, S/N 0-PAP010674, and any accompanying magazines and ammunition;

b. FN Rifle, Model FN15, multi-caliber, S/N FNB015078, and any accompanying magazines and ammunition;

c. FN Rifle, Model PS90, 5.7-28 caliber, and any accompanying magazines and ammunition;

d. Ruger Rifle, Model 10/22 50th Anniversary, .22 caliber, S/N 0001-4484, and any accompanying magazines and ammunition;

e. Cobra Derringer, Model CB 38 Special, .38 caliber, S/N CT187616, and any accompanying magazines and ammunition;

f. Taurus Revolver, Model The Judge, .410 caliber and 45 Colt, S/N ABH748554, and any accompanying magazines and ammunition;

g. Remington Shotgun, Model 1100, 12 gauge, S/N L257280V, and any accompanying magazines and ammunition;

h. Glock Pistol, Model 19, 9mm caliber, S/N AAKS576 and any accompanying magazines and ammunition;

i. Smith & Wesson Pistol, Model Bodyguard, .380 caliber, S/N EAZ3333 and any accompanying magazines and ammunition;

j. Remington Shotgun, Model 870 Tactical, 12 gauge, S/N RS29688W, and any accompanying magazines and ammunition;

k. Mossberg Shotgun, Model 500, 12 gauge, S/N U318800, and any accompanying magazines and ammunition; and

1. Kral AV Sanayi Tristar Shotgun, Model Raptor, 12 gauge, S/N KRA05471, and any accompanying magazines and ammunition.

(In violation of Title 18, United States Code, Section 922(g)(3).)

## COUNT SIX
*(Unlawful Possession of a Machinegun)*

THE GRAND JURY CHARGES THAT:

On or about April 23, 2021, in Springfield, Virginia, within the Eastern District of Virginia, the defendant, KRISTOFER DOUGLAS KNICKERBOCKER, did knowingly possess a machinegun, as defined in Title 26, United States Code, Section 5845(b), to wit machinegun conversion devices, that is a part designed and intended solely and exclusively for use in converting a weapon into a machinegun.

(In violation of Title 18, United States Code, Section 922(o).)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

Pursuant to Fed. R. Crim. P. 32.2(a), the defendants, KRISTOFER DOUGLAS KNICKERBOCKER and KIMBERLYNA LOVE SOK, are hereby notified that if convicted of the violations set forth in Counts One through Three of the Indictment they shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a) the following: (1) any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of such violation and (2) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation.

Pursuant to Fed. R. Crim. P. 32.2(a), the defendants, KRISTOFER DOUGLAS KNICKERBOCKER and KIMBERLYNA LOVE SOK, are hereby notified that if convicted of any of the violations set forth in this Indictment they shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in or used in the commission of the offense.

The property subject to forfeiture includes, but is not limited to, the following:

a. Zastava Rifle, Model M 70, .762 caliber, S/N 0-PAP010674, and any accompanying magazines and ammunition;

b. FN Rifle, Model FN15, multi-caliber, S/N FNB015078, and any accompanying magazines and ammunition;

c. FN Rifle, Model PS90, 5.7-28 caliber, and any accompanying magazines and ammunition;

d. Ruger Rifle, Model 10/22 50th Anniversary, .22 caliber, S/N 0001-4484, and any accompanying magazines and ammunition;

e. Cobra Derringer, Model CB 38 Special, .38 caliber, S/N CT187616, and any accompanying magazines and ammunition;

f. Taurus Revolver, Model The Judge, .410 caliber and 45 Colt, S/N ABH748554, and any accompanying magazines and ammunition;

g. Remington Shotgun, Model 1100, 12 gauge, S/N L257280V, and any accompanying magazines and ammunition;

h. Glock Pistol, Model 19, 9mm caliber, S/N AAKS576 and any accompanying magazines and ammunition;

i. Smith & Wesson Pistol, Model Bodyguard, .380 caliber, S/N EAZ3333 and any accompanying magazines and ammunition;

j. Remington Shotgun, Model 870 Tactical, 12 gauge, S/N RS29688W, and any accompanying magazines and ammunition;

k. Mossberg Shotgun, Model 500, 12 gauge, S/N U318800, and any accompanying magazines and ammunition; and

l. Kral AV Sanayi Tristar Shotgun, Model Raptor, 12 gauge, S/N KRA05471, and any accompanying magazines and ammunition.

m. All miscellaneous ammunition, silencers, and magazines, seized pursuant to a federal seizure warrant executed on April 23, 2021, at the defendant's residence located in Springfield, Virginia;

n. Two Level III armor plates; seized pursuant to a federal seizure warrant executed on April 23, 2021, at the defendant's residence located in Springfield, Virginia;

o. One black vest plate carrier with ballistic plates inserted in the vest, seized pursuant to a federal seizure warrant executed on April 23, 2021, at the defendant's residence located in Springfield, Virginia;

p. Five suspected sears, as well as any miscellaneous gun parts and gun making equipment, seized pursuant to a federal seizure warrant executed on April 23, 2021, at the defendant's residence located in Springfield, Virginia; and

q. $5,002 in U.S. Currency, seized pursuant to a federal seizure warrant executed on April 23, 2021, at the defendant's residence located in Springfield, Virginia.

KRISTOFER DOUGLAS KNICKERBOCKER and KIMBERLYNA LOVE SOK, shall forfeit substitute property if, by any act or omission of the defendants, the property referenced above or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the

Court; has been substantially diminished in value; or has been comingled with other property which cannot be divided without difficulty.

  (In accordance with 21 U.S.C. § 853; 18 U.S.C. § 924(d)(1); 28 U.S.C. § 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.)

A TRUE BILL

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____
FOREPERSON

Raj Parekh
Acting United States Attorney

By: _____
Rachael C. Tucker
Assistant United States Attorney

11